# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

_____

NORMAN PRICER,

                **Plaintiff,**

v.                                                **CIV. No.  98-1310 JP/RLP**

STATE OF NEW MEXICO,
ENVIRONMENT DEPT., and
PETER MAGGIORE,

                **Defendants.**

## MEMORANDUM OPINION AND ORDER

On September 16, 1999, Defendant State of New Mexico Environment Department ("NMED") filed a Motion for Summary Judgment, (Doc. No. 26), seeking to dismiss Plaintiff Norman Pricer's ("Pricer") claim of age discrimination brought under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, _et seq_. ("ADEA").   After carefully reviewing the briefs, the pleadings, and the applicable law, I conclude that NMED's motion should be granted because Pricer has failed to establish a genuine issue of material fact as to whether NMED's proffered reasons for transferring Pricer and failing to promote him were the real reasons.

## I.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed R. Civ. P. 56(c).  "When applying this standard, we examine the factual record and reasonable inferences therefrom in the light

most favorable to the party opposing summary judgment." *Applied Genetics Int'l., Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990). The party moving for summary judgment bears the burden of "'showing'--that is, pointing out to the district court-- that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Only then does the burden shift to the non-movant to come forward with evidence showing that there is a genuine issue of material fact. *See Bacchus Indus. Inc. v. Arvin Indus. Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). The non-moving party may not avoid summary judgment by resting upon the mere allegations or denials of his or her pleadings. *Id.* "In reviewing the record for genuine issues of material fact, [I] construe the pleadings and documentary evidence liberally in favor of the nonmoving party." *Cole v. Ruidoso Mun. Schools*, 43 F.3d 1373, 1379 (10th Cir. 1994).

## II.   BACKGROUND

Pricer has been employed by NMED since August 1989. During the time the events alleged in Pricer's second amended complaint occurred, Pricer was between 59 and 61 years old. In July 1996, NMED transferred Pricer from the Grants office to the Albuquerque office. According to NMED, he was transferred because the funding for his temporary position expired. Pricer, who still lives in Grants and apparently makes the 170 mile round-trip commute to Albuquerque on a daily basis, claims that his transfer constituted an adverse employment action motivated by age discrimination that was intended to make him quit his job.

In October 1996 Pricer interviewed with David Duran for the position of Health Program Manager 1-A, which requires a degree. Pricer claims that the position was not filled at that time and that in May 1997 the position's title was changed to Manager V, which does not require a

degree, for the sole purpose of enabling Ruben Baca, who does not have a degree, to qualify for the position. Pricer also contends that NMED did not interview applicants for the Manager V position before selecting Baca to fill it ("Baca position"). NMED claims that in May 1997 Duran interviewed Pricer for the Manager V position.

The parties agree that Pricer applied for three other promotions he did not receive. In September 1997, Pricer interviewed with Lloyd William Bartels for a position as Health Program Manager 1-A that was ultimately awarded to Charles Lundstrom ("Lundstrom position"). During the same month, Cecilia Williams interviewed Pricer for a position within the Air Quality Bureau as Health Program Manager 1-A, which eventually went to Vincent Vigil ("Vigil position"). Finally, in June 1998 Pricer interviewed with Duran for a position as Environmental Supervisor with the Underground Storage Tank Bureau, which Dan Lopez received ("Lopez position"). Pricer claims that NMED's failure to promote him to these four positions,[1] which were all awarded to individuals younger than Pricer, was motivated by age discrimination.

## III.    DISCUSSION

### A.    Admissibility of exhibits and affidavits

In its Reply, NMED challenges the admissibility of some of the affidavits and exhibits attached to Pricer's response. Although the most appropriate vehicle for making objections to material supporting a motion or response is a motion to strike, "[a]ll that is required is a timely objection that sets forth the ground for the objection." *Lugue v. Hercules, Inc.*, 12 F. Supp. 2d

---

[1] In his original complaint, Pricer alleged that his failure to receive twelve promotions he had applied for constituted adverse employment actions based on age discrimination. After receiving discovery regarding the birth dates of those who received the twelve promotions and the reasons he was not promoted, Pricer narrowed his allegations of age discrimination to four denied promotions.

1351, 1358 (S.D.Ga. 1997) (citation omitted); *see also* 11 James WM. Moore, *Moore's Federal Practice* § 56.14[4][a] (stating that materials submitted in connection with a motion for summary judgment can be challenged through a motion to strike). However, because NMED has made timely objections, those objections will be considered.

### 1. *Raymond Madson's affidavit*

NMED claims that Raymond Madson's affidavit testimony is inadmissible. In the affidavit, Madson states that until April 1996 he was employed at NMED as the Health Program Manager. Madson Aff. at ¶ 2, Ex 3 to Resp. He opines that "the Grants area is currently <u>not</u> receiving enough environmental protection from the New Mexico Environment Dept., and more protection is needed, especially in the NMED's Underground Storage Tank ( UST ) Program." *Id*. at ¶ 4 (emphasis in original). Madson also states his belief that it was a mistake to transfer Pricer from Grants to Albuquerque. *Id*. at ¶ 5. NMED argues that this affidavit is inadmissible for numerous reasons: it represents opinion evidence from a lay witness; Madson was never identified as an expert; NMED never received an expert report from him; Pricer did not lay any foundation for Madson's opinion; and Madson's affidavit is not based on personal knowledge.

Rule 56(e) states in pertinent part, "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e); *see Hall v. Bellmon*, 935 F. 2d 1106, 1111 (10th Cir. 1991) (stating that "nonmovant's affidavits must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient.").

Since Madson left the Grants office in April 1996, and Pricer was not transferred to the

Albuquerque office until July 1996, common sense dictates that Madson lacks any personal knowledge of the needs of the Grants office at the time Pricer was transferred. Moreover, Madson's affidavit, which is a mere six paragraphs long, fails to set forth any factual basis to support his conclusory assertion that the Grants area is underserved by NMED and that it was a mistake to transfer Pricer. Because Madson's affidavit is based on speculation rather than personal knowledge, it fails to comply with Rule 56(e) and NMED's challenge to it will be sustained.

### 2. *Pricer's affidavit*

Paragraph four of Pricer's affidavit states that "I believe that I was set up by the Defendant by first being ordered to give away many of my inspection sites, and then being transferred to Albuquerque from Grants to create such a daily travel hardship that I would quit." Pricer Aff. at ¶ 4, Ex. 1 to Resp. NMED cogently argues that this statement in inadmissible because it is conclusory and self-serving. *See Hall*, 935 F. 2d at 1111; *Murray v. City of Sapulpa*, 45 F.3d 1417, 1422 (10th Cir. 1995). Therefore, it will not be considered in evaluating NMED's motion for summary judgment. *See* Fed. R. Civ. P. 56(e).

### 3. *Thornton Affidavit*

NMED contends that the affidavit of Bill Thornton, which states that the amount of rent he has charged NMED for the Grants office has increased since 1994, is inadmissible because Pricer failed to disclose Thornton under Rule 26(a) as a witness in response to NMED's Interrogatory No. 8.

The Federal Rules of Civil Procedure state that a "party that without substantial justification fails to disclose information required by Rule 26(a) . . . shall not, unless such failure

is harmless, be permitted to use as evidence . . . on a motion any witness or information not so disclosed." Fed. R. Civ. P. 37(c)(1). *See also* Fed. R. Civ. P. 37(c)(1) advisory committee's note (stating that the revision of Fed. R. Civ. P. 37(c) provides for a self-executing sanction for failing to comply with Rule 26(a) and "provides a strong inducement for disclosure of material that the disclosing party would expect to use as evidence . . . on a motion, such as one under Rule 56.").

Pricer has failed to provide any "substantial justification" for failing to comply with Rule 26(a). Nevertheless, this "failure is harmless" because the information contained in the Thornton affidavit is completely irrelevant to a consideration of whether Pricer has overcome NMED's motion for summary judgment regarding Pricer's alleged discriminatory transfer from the Grants to the Albuquerque office. Whether the rent increased at the Grants office is not at issue because NMED alleges that it transferred Pricer because the funding for his temporary *position* expired--not because funding for the Grants *office* expired. Because Pricer's failure to comply with Rule 26(a) is harmless, Rule 37(c)(1) does not prohibit its consideration.

### 4. *Remaining Exhibits*

Finally, NMED makes the blithe assertion that Pricer's "remaining exhibits are also inadmissible because [Pricer] has laid no foundation for their admissibility in his affidavit." Documents submitted with a motion for summary judgment must be authenticated by an affidavit and the affiant must be a person through whom the documents could be admitted at trial. *See Canada v. Blain's Helicopters, Inc.*, 831 F. 2d 920, 925 (9th Cir. 1987). In other words, there must be a proper foundation. *Id*. The "remaining exhibits" attached to Pricer's Response,

however, are numerous and varied.[2]

In the absence of specific objections to specific exhibits, NMED's objection to the remaining exhibits will not be considered. *Cf. Lugue*, 12 F. Supp. 2d at 1358 (considering plaintiff's objections to material submitted in connection with motion for summary judgment and stating, "Plaintiffs identified both the objectionable evidence and provided grounds for their objections.").

**B.**    **Pricer's age discrimination claim**

    *1.    The ADEA*

The parties agree that Pricer does not have direct evidence of discrimination and that the *McDonnell Douglas* burden-shifting analysis applies in this case. *See MacDonald v. Eastern Wyoming Mental Health Center*, 941 F.2d 1115, 1119 (10th Cir. 1991) (stating that ADEA plaintiffs "may establish discrimination indirectly through the three-part framework applicable to discrimination claims under Title VII and set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 293 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and its progeny." *MacDonald*, 941 F.2d at 1119.

Under the *McDonnell-Douglas* analysis, a plaintiff must first establish a prima facie case

---

[2] The remaining exhibits are: Exhibit 4, which is NMED's Answer to Plaintiff's First Set of Interrogatories; Exhibits 5, 8, and 12, which are excerpts from the deposition testimony of Shelda Sutton-Mendoza; Exhibits 6a-10, which are Pricer's performance evaluations; Exhibit 7, which is a two page document of interview questions and Lundstrom's responses; Exhibit 9, which is apparently an employment record filled out by Baca as part of his application; Exhibit 10, which is a page of interview notes regarding Pricer's application for the Baca position; Exhibit 11, which is a letter from Cabinet Secretary Peter Maggiore to the Director of the State Personnel Office requesting a temporary 15% salary increase for an employee; Exhibit 11-2, which is a copy of DFA Rule No. 78-10 rule regarding moving expenses; and Exhibits 13 to 13-10, which are certificates from various courses Pricer has taken.

of discrimination.  To do this, "a plaintiff must ordinarily show that he was (1) within the protected age group; (2) adversely affected by the defendant's employment decision; (3) qualified for the position at issue; and, (4) replaced by a person outside the protected group." *Branson v. Price River Coal Co.*, 853 F.2d 768, 770 (10th Cir. 1988).  Regarding a failure to promote claim, the Tenth Circuit has focused the prima facie case analysis to a determination of whether the plaintiff was "(1) was within the protected age group at the time of the failure to promote; (2) was qualified for promotion;  (3) was not promoted;  and (4) was passed over for an available promotion in favor of someone younger."  *Furr v. AT & T Technologies, Inc.*, 824 F.2d 1537, 1542 (10th Cir. 1987).

After a plaintiff has established a prima facie case of discrimination, the employer has the burden of coming forward with a nondiscriminatory explanation for the adverse employment action.  *See Branson*, 853 F.2d at 770.  Once the employer presents such an explanation, the "plaintiff then assumes the normal burden of any plaintiff to prove his or her case at trial." *E.E.O.C. v. Flasher Co., Inc.*, 986 F.2d 1312, 1316 (10th Cir. 1992), *overruling on other grounds recognized by Kline v. Tennessee Valley Authority*, 128 F.3d 337 (6th Cir. 1997).  At this point, "the presumption in plaintiff's favor that arose from the establishment of a prima facie case simply 'drops from the case.'"  *Id.* (citation omitted).

To overcome a motion for summary judgment at this juncture, the "plaintiff's burden is only to demonstrate a genuine dispute of material fact as to whether the proffered reasons were unworthy of belief."  *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1321 (10th Cir. 1997) (citation omitted); *see Randle v. City of Aurora*, 69 F.3d 441, 452 n. 17 (10th Cir. 1995) (stating that a "civil rights plaintiff may withstand a motion for summary judgment and is entitled to present his

claim to the fact finder if the plaintiff establishes a prima facie case and presents evidence that the defendant's proffered nondiscriminatory reason was pretextual--i.e., unworthy of belief."). Thus, "a plaintiff need *not* demonstrate that discriminatory reasons motivated the employer's decision" in order to overcome a motion for summary judgment. *Morgan*, 108 F.3d at 1321-22 (emphasis added) (citing *Randle*, 69 F.3d at 451-52).

A plaintiff may establish pretext by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Morgan*, 108 F.3d at 1323 (all quotation marks and citations omitted). Other "[e]vidence of pretext may include, but is not limited to, the following: prior treatment of plaintiff; the employer's policy and practice regarding minority employment (including statistical data); disturbing procedural irregularities (e.g., falsifying or manipulating hiring criteria); and the use of subjective criteria." *Simms v. Oklahoma*, 165 F.3d 1321, 1328 (10th Cir. 1999), *cert. denied*, ___ U.S. ___, 120 S.Ct. 53 (1999). It is also "conceivable that a plaintiff . . . could be so overwhelmingly better qualified than another applicant that on this evidence alone a trial court could properly find pretext and intent to discriminate." *Sanchez v. Phillip Morris Inc.*, 992 F.2d 244, 247 (10th Cir. 1993). However, a plaintiff's "mere conjecture that their employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment." *Branson*, 853 F.2d at 772.

Without deciding the issue, I assume that Pricer has met the elements of his prima facie case with respect to each of the four promotions he did not receive. *See Aramburu v. Boeing Co.*, 112 F.3d 1398, 1403 (10th Cir. 1997); *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1324 (10th Cir. 1997); *Jones v. Unisys Corp.*, 54 F.3d 624, 630 (10th Cir. 1995). NMED's legitimate nondiscriminatory reason for failing to award Pricer the promotions is that other applicants were equally or more qualified than he was. The issue to be decided is whether Pricer has "demonstrate[d] a genuine dispute of material fact as to whether [NMED's] proffered reasons were unworthy of belief," *Morgan*, 108 F.3d at 1321.

In evaluating whether Pricer has established that there is a genuine issue of material fact regarding pretext, I am mindful that "the AEDA is not violated by erroneous or even illogical business judgments." *Furr v. Seagate Technology, Inc.*, 82 F.3d 980, 986 (10th Cir. 1996), *cert. denied*, 519 U.S. 1056 (1997). "[D]istrict courts are not in the position of determining whether a business decision was good or bad." *Sanchez*, 992 F.2d 244 (citation omitted). Because the "courts are not free to second-guess an employer's business judgment," an assertion by a plaintiff that he or she is equally or more qualified than another employee "is insufficient to support a finding of pretext." *Branson*, 853 F.2d at 772 (affirming district court's grant of summary judgment for employer when laid-off employee claimed she was "equally or more qualified" than employee who was not laid-off). Invocation of the business judgment rule does not, however, prevent a district court from comparing the relative qualifications of a plaintiff and the successful applicant. *Sanchez*, 992 F.2d 244. The district court must consider the "reality of the entire situation."

Unfortunately, the comparison of Pricer's qualifications with that of the successful applicants has been hindered in this case by the failure of Pricer to submit any of the resumes or applications he submitted for the four promotions. With the exception of what appears to be an excerpt from Baca's application, Pricer also failed to include any resumes, applications, or deposition testimony of the four successful applicants that would afford a thorough consideration of the situation surrounding the promotions. Pricer did, however, submit some interview notes from Lundstrom's interview, Ex. 7 to Resp., and some notes from his own interview for the Baca position, Ex. 10 to Resp.

a.     <u>Baca position</u>

NMED states that it selected Baca over Pricer for the Manager V position because Baca had more experience than Pricer regarding tank inspections, Pricer lacked extensive experience in the application of regulations, Pricer had demanded a 12% salary increase or moving expenses as a prerequisite to accepting the job, which is not permitted under NMED policy or the New Mexico State personnel policy, and Baca had demonstrated his ability to work with, train, and supervise inspectors. Duran Aff. at ¶ 7, Ex. I to NMED's Memo. Despite this assertion, NMED concedes that the issue of whether Pricer or Baca was more qualified is a genuine issue of material fact. NMED contends, however, that this concession is not a sockdolager because the court cannot substitute its business judgment for NMED's. *See Furr,* 82 F.3d at 986.

Pricer disputes that he was less qualified than Baca. In support of this assertion, Pricer points to the accolades contained in his performance evaluations, Ex. 6a to 6-10 to Resp., and claims that he has one more year of tank inspection experience than Baca. Citing to the deposition testimony of former NMED administrator Shelda Sutton-Mendoza, Pricer argues that

-11-

he has shown pretext by offering evidence that the position was declassified from Manager V to Health Program Manager 1-A for the sole purpose of giving the job to Baca. Sutton-Medoza Depo. at 31. Pricer denies that he demanded a 12% pay increase or moving expenses. Nevertheless, he submits a letter from Cabinet Secretary Peter Maggiore to the State Personnel Director asking for a 15% temporary raise for another employee, Ex. 11-1 to Resp., and a copy of DFA Rule 78-10 that proscribes eligibility for moving expenses, Ex. 11-2 to Resp.

Although there appears to be a genuine issue of material fact regarding whether Pricer was more qualified than Baca and whether Pricer demanded a salary increase and moving expenses as a prerequisite to accepting the position, that does not mean that Pricer has established a genuine issue of material fact regarding whether NMED's proffered reason for promoting Baca is the real reason. Pricer does not contend that Baca was unqualified for the position. In the interview notes regarding Pricer's interview for the Baca position, the interviewer wrote "poor response to question!" concerning Pricer's response to question number five and also noted that Pricer had "lots of Corp. Supervisory (projects) experience (little on direct employee supervisory experience.)." Interview Notes, Ex. 10 to Resp. This evidence, which is consistent with NMED's legitimate reason for promoting Baca instead of Pricer, militates in favor of the conclusion that Pricer's evidence is insufficient to demonstrate that he was "so overwhelmingly better qualified," than Baca that on this evidence alone he has established pretext. *Sanchez*, 992 F.2d at 247; *see also Branson*, 853 F.2d at 772 (holding that plaintiff's claims that she was "equally or more qualified" than another employee was insufficient to support a finding of pretext). "We must assume that the company employees who did the hiring knew what particular qualifications and experiences were necessary." *Sanchez*, 992 F.2d

at 247.

Pricer's strongest evidence of pretext appears to be that NMED declassified the position to enable Baca to be qualified for it. However, when asked the basis of her statement that the Health Program Manager 1-A position was declassified to allow Baca to qualify for it, Sutton-Mendoz responded "that's just gossip through the grapevine." *Id.* at 32. Because this statement is based on hearsay and speculation, it cannot properly be considered. *See* Fed. R. Civ. P. 56(e) (affidavits must be based on personal knowledge).

Pricer admits that he interviewed for the Baca position before it was declassified. Although Pricer claims he is more qualified than Baca, he does not claim that Baca was *un*qualified for the position. While there are some genuine issues of material fact regarding who was *more* qualified for the Manager V position, Pricer has not shown "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in" NMED's reason for promoting Baca "that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employee did not act for the asserted non-discriminatory reasons." *Morgan*, 108 F.3d at 1323 (all quotation marks and citations omitted).

### b.     Lundstrom position

NMED claims to have promoted Ludstrom over Pricer on the basis of Lundstrom's leadership experience, his understanding of the Albuquerque field office and prior work there, and his high motivation and interest. Bartels Aff. at ¶ 6, Ex. G to NMED's Memo. According to the employee who interviewed the candidates, Lundstrom's qualifications were superior to Pricer's because Pricer lacked leadership ability, could not express his goals for the program and appeared to lack motivation and desire to be a team player. Bartels Aff. at ¶ 7, Ex. G to

NMED's Memo.

Pricer denies that Lundstrom was more qualified than he was or had better leadership skills. He again cites to his positive performance evaluations, Exs. 6a to 6-10. He also cites to the deposition testimony of Sutton-Mendoza, who had previously held the Health Program Manager position and had supervised both Pricer and Lundstrom. Suttom-Mendoza Depo. at 35-36, Ex. 12. She stated that Pricer's job performance was superior to Lundstrom's and that Lundstrom was a "little young and immature." *Id.* Finally, Pricer argues that NMED's criticism of him for failing to express his own goals for the program cannot be given credence in light of the interviewer's notes from Lundstrom's interview, which state that Lundstrom had "no concrete ideas" about how to expand program services without additional resources. Lundstrom Interview Notes at 2, Ex. 7 to Resp.

Pricer's reliance on Sutton-Mendoza's testimony that she believed Pricer should have been promoted over Lundstrom is not persuasive. *See Rabinovitz v. Pena*, 89 F.3d 482 (7th Cir. 1996). In *Rabinovitz*, the plaintiff sued his employer for age and religious discrimination arising from his failure to be promoted. *Id.* The employer claimed it did not promote the plaintiff because he lacked the necessary supervisory and managerial skills. *Id.* at 487. To refute his employer's legitimate nondiscriminatory reason for failing to promote him, the plaintiff submitted three affidavits from his co-workers stating that he was more qualified for the promotion than the person who had received it. *Id.* at 487. The Seventh Circuit held that "[t]he affidavits are not sufficient to show that the FAA's explanation is unworthy of credence." *Id.* The court found that the "affidavits do not allege specific facts to support the necessary inference that Sipek was so much less qualified than Rabinovitz that only discrimination could have prevented Rabinovitz

from receiving the promotion," and that the "affidavits also do not contain facts that shed any light on what Libby, who made the ultimate decision, knew or did not know regarding the events alleged in the affidavits that formed the basis of the perceived differences between Sipek and Rabinovitz." *Id.*

Like the three affidavits offered in *Ravinovitz*, Sutton-Mendoza's deposition testimony does not allege specific facts to support the inference that Lundstrom was so much less qualified than Pricer that only discrimination could have prevented Pricer from receiving the promotion. *Id.* Nor does her affidavit contain facts revealing what Bartels, who interviewed Lundstrom and Pricer, knew about Lundstrom's alleged lack of maturity and poor job performance. *Id.* Therefore, Sutton-Mendoza's affidavit is insufficient to establish that there is a genuine issue of fact regarding whether NMED's proffered legitimate reason for promoting Lundstrom is unworthy of credence.

Pricer's remaining evidence is also insufficient to "demonstrate a genuine dispute of material fact as to whether [NMED's] proffered reasons were unworthy of belief," *Morgan*, 108 F.3d at 1321. Although Pricer has submitted evidence that Lundstrom lacked concrete ideas about how to expand program services without additional resources, this evidence does not directly relate to the question of whether *Pricer* had his own ideas for the program. Bartels Aff. Ex. G. Pricer's performance evaluations and certificate for having taken a leadership skills course, Ex. 13-1, do not show that Pricer was "so overwhelmingly better qualified," than Lundstrom that "on this evidence alone a trial court could properly find pretext and intent to discriminate." *Sanchez*, 992 F.2d at 247. Pricer is essentially contending that he was "equally or more qualified" than Lundstrom for the position. *See Branson*, 853 F.2d at 772. Pricer has not

offered admissible evidence that Lundstrom was unqualified for the position. A mere difference in qualifications is not in itself sufficient to establish pretext. *See Sanchez*, 992 F.2d at 248.

c.     <u>Vigil position</u>

Cecilia Williams, who interviewed applicants for the Vigil position, does not recall interviewing Pricer. Williams Aff. at ¶ 4, Ex. J to NMED's Memo. She states that she recommended Vigil for the position because of his experience as acting program manager and his several years of experience in air quality enforcement. *Id.* at ¶ 6. After reviewing Pricer's resume, Williams stated that even if he had interviewed for the position, she would have recommended Vigil because Pricer had no air quality experience. *Id.* at ¶ 7, 8.

Pricer claims that he did interview for the Vigil position, Pricer Aff. at ¶ 8, Ex. 1, and that he has twenty-two years of air quality control experience. *Id.* at ¶ 9. Evidence that Williams does not recall interviewing Pricer two years ago does not, however, demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in" NMED's legitimate reason for promoting Vigil "that a reasonable factfinder could rationally find them unworthy of credence and hence infer that" NMED "did not act for the asserted non-discriminatory reasons." *Morgan*, 108 F.3d at 1323 (quotation marks and citations omitted). This evidence does not undermine Vigil's qualifications for the position or his selection for it based on his air quality experience and his experience as an acting program manager. Pricer's evidence also does not establish whether Williams knew that Pricer had twenty-two years of air quality control experience[3] or whether Pricer had any experience as an acting program manager.

---

[3] Pricer could have submitted evidence on this issue by attaching copies of any applications or resumes he submitted for the Vigil position. An affidavit stating that he told the interviewer of his experience would have also sufficed.

What Pricer is essentially contending is that he was equally or more qualified than Vigil--not that Vigil was unqualified for the position. "[D]istrict courts are not in the position of determining whether a business decision was good or bad," *Sanchez*, 992 F.2d at 247, and an assertion by a plaintiff that he is equally or more qualified than another employee "is insufficient to support a finding of pretext." *Branson*, 853 F.2d at 772 .

d.  Lopez position

David Duran interviewed applicants for the Lopez position and recommended Lopez because of his familiarity with current underground storage tank requirements, his experience in tank inspection techniques, and because he was more responsive to interview questions and was better than Pricer at articulating how to evaluate the current effectiveness of the program. Duran Aff. at ¶ 17, Ex. I. Duran also found Pricer's knowledge of some regulations to be outdated, which Duran apparently attributed to the fact that Pricer had most recently worked in the investigations program rather than in the inspection program. *Id*. at ¶ 18. Duran also concluded that Pricer's experience was not as extensive or varied as Lopez.' *Id*.

Pricer contends that his training certificates, Exs. 13-1 to 13-10, and performance evaluations, Exs. 6a to 6-10, which specifically praise him for keeping up-to-date in his field, Ex. 6-8, and for surpassing NMED's goals regarding inspections, Ex. 6-6, undermine any assertion that his knowledge of regulations was outdated. Although he does not directly cite to Sutton-Mendoza's deposition, Pricer also contends that he has established pretext by offering her testimony that she believed he was more qualified for the position than Lopez.

Sutton-Mendoza's deposition testimony offers no assistance to Pricer in establishing a genuine issue of material fact regarding whether NMED's proffered reason for promoting Lopez

was a pretext for discrimination. In her testimony, Sutton-Mendoza praises Lopez's ability as an inspector and states that Lopez was "good at his job," that both he and Pricer have "good points," and that it is difficult to conclude who would have been a better supervisor. Sutton-Mendoza Aff. at 37-38, Ex. 12 to Resp. She further stated that, as far as she knew, Lopez had no supervisory experience prior to receiving the promotion. *Id*. at 38. Sutton-Mendoza did not state any facts establishing that she had personal knowledge of Lopez' supervisory history nor did she state what Duran, who recommended Lopez for the position, knew about Lopez' supervisory experience or qualifications for the position. Her deposition testimony is insufficient to show that NMED's explanation for promoting Lopez is unworthy of credence. *See Rabinovitz*, 89 F.3d at 487.

Once again, Pricer's remaining evidence--his performance evaluations and training certificates--is also insufficient to show that NMED's decision to promote Lopez is unworthy of belief. Standing alone, this evidence does not establish pretext by showing that Pricer was "so overwhelmingly better qualified," than Lopez, S*anchez*, 992 F.2d at 247, particularly in the absence of documents regarding Lopez' and Pricer's qualifications or what the interviewer knew about each applicant's qualifications. Assuming, *arguendo*, that Pricer is "equally or more qualified" than Lopez, that is not in itself sufficient to establish pretext. *See Branson*, 853 F.2d at 772; *see also Sanchez*, 992 F.2d at 248.

### 3. *Transfer from Grants to Albuquerque*

NMED denies that Pricer was "transferred" to the Albuquerque office. According to NMED, after the funding for his temporary position at the Grants office expired in July 1996 it offered Pricer a position in the Albuquerque office in lieu of letting him go. Sutton-Mendoza

Depo. at 43, Ex. C to Reply (stating that Pricer's job was a "term" position "funded by tank fees," not by state appropriations). At the direction of Defendant Peter Maggiore, Sutton-Mendoza "went on a mission to find [Pricer] something else" after funding for his temporary position lapsed. *Id.* She eventually found an opening in the Albuquerque office. *Id.* at 44.

Pricer argues that NMED's alleged reason for transferring him is a pretext for age discrimination. In his deposition, Pricer offered equivocal testimony regarding his understanding of whether the Grants position was temporary or permanent. Pricer Depo. at 51-52, Ex. A to NMED's Memo. After stating that he was not told that he could be required to transfer from the Grants office when he took the position, *id.* at 51, Pricer testified that "[i]t was a new program, so yeah, you might say it was temporary." *Id.* at 52. When asked whether he understood "that it could at some point in the future cease to exist," Pricer responded "Yes, sir, I was very aware of that, that it could at some point in the future cease to exist." *Id.* Despite this concession, Pricer argues that he has shown evidence by submitting his affidavit and the affidavit of the landlord of the Grants office, Bill Thornton. Thornton's affidavit merely states that the rent for the Grants office has increased since 1994. Thornton Aff., Ex. 2 to Resp. Pricer's affidavit states that the Grants office remains open and staffed by at least two individuals. Pricer Aff., Ex. 1 to Resp..

Without deciding the issue, I assume that Pricer has met the elements of his prima facie case with respect to his transfer from the Grants to Albuquerque office. *See Aramburu v. Boeing Co.*, 112 F.3d 1398, 1403 (10th Cir. 1997); *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1324 (10th Cir. 1997); *Jones v. Unisys Corp.*, 54 F.3d 624, 630 (10th Cir. 1995). NMED has proffered a legitimate non-discriminatory reason for the transfer--that funding for his temporary position expired. To overcome a motion for summary judgment at this point, the "plaintiff's

burden is only to demonstrate a genuine dispute of material fact as to whether the proffered

reasons were unworthy of belief." *Morgan*, 108 F.3d at 1321. This Pricer has failed to do.

Sutton-Mendoza's testimony states that Pricer's position was only temporary and that

NMED transferred him when that funding expired. Pricer himself has conceded that his Grants

position could be characterized as "temporary" and that his position "could at some point in the

future cease to exist." *Id.* Pricer Depo. 52, Ex. A to Pricer's Memo. The fact that the Grants

office has remained open and the rent has even increased does not demonstrate "such

weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the[ NMED]'s

proffered legitimate reasons for its action that a reasonable factfinder could rationally find them

unworthy of credence and hence infer that [NMED] did not" transfer Pricer to the Albuquerque

office because funding for his temporary position had expired. *Morgan*, 108 F.3d at 1323 (all

quotation marks and citations omitted). NMED has consistently claimed that funding for

Pricer's *position* at the Grants office expired--not that funding for the Grants *office* expired.

Pricer's proffered evidence does nothing to cast doubt upon NMED's contention that he held a

temporary position at the Grants office and that the funding for that position simply ran out. In

the absence of more concrete evidence of pretext,[4] the "mere conjecture that [his] employer's

explanation is a pretext for intentional discrimination is an insufficient basis for denial of

summary judgment." *Branson*, 853 F.2d at 772.

---

[4] Even if I considered the Madson affidavit, this would not change my conclusion.
Madson's affidavit merely states his conclusory opinion that it was a mistake to transfer Pricer
because he is needed at the Grants office. Besides the fact that this conclusion does not appear to
be based on personal knowledge, NMED's proffered reason for transferring Pricer is that *funding*
for his position expired--not that there was no longer a need for him there.

IT IS THEREFORE ORDERED that NMED's Motion for Summary Judgment, (Doc. No. 26) is

GRANTED and Pricer's claim of age discrimination against NMED, Count I of Pricer's second

amended complaint, should be dismissed with prejudice.


_____

UNITED STATES DISTRICT COURT JUDGE