# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**NORMAN PRICER,**

        **Plaintiff,**

**v.**                                **CIV. No. 98-1310 JP/RLP**

**PETER MAGGIORE,**

        **Defendant.**

## MEMORANDUM OPINION AND ORDER

On June 8, 2000 Defendant filed his Second Motion for Summary Judgment based on Qualified Immunity, (Doc. No. 69). Having carefully considered the briefs and the law, I conclude that the motion should be granted.

## Background

At a June 2, 2000 pretrial conference the Court heard oral argument on Defendants' two unfiled motions for summary judgment. In a June 5, 2000 Memorandum Opinion and Order this Court granted Defendant's two motions for summary judgment on two separate grounds: 1.) that Plaintiff's speech was not a matter of public concern and was therefore not entitled to First Amendment protection; and 2.) that Defendant was entitled to qualified immunity.

On June 12, 2000 Plaintiff filed "Plaintiff's 6/12/00 Rule 59(e) Motion to Alter 6/5/00 Summary Judgment," (Doc. No. 72), arguing that this Court should strike that portion of the Memorandum Opinion and Order granting Defendant's second motion for summary judgment

because the Court granted the motion without hearing oral argument on it and without permitting Plaintiff to file a response to Defendant's motion.  The Court pointed out in its July 21, 2000 Order, (Doc. No. 75), that Plaintiff's Rule 59(e) motion was an exercise in futility because the Court had dismissed Plaintiff's First Amendment claim on the ground of qualified immunity *and* on the ground that Plaintiff's speech did not meet the public concern requirement.  Nevertheless, Plaintiff was permitted to file a response to Defendant's motion for summary judgment on the ground of qualified immunity.

Plaintiff filed his response on August 8, 2000.  He argues that Defendant is not entitled to qualified immunity because "two decisions for the U.S. Supreme Court have clearly held that the right to contact an elected representative for matters of private concern is a constitutionally protected right."  In support of this argument Plaintiff quoted two Supreme Court opinions, although both were cited incorrectly.  Plaintiff quoted the following language from *Thomas v. Collins,* 323 U.S. 516, 531 (1945):[1] "[t]he grievances for redress of which the right of petition was insured, and with it the right of assembly, are not solely religious or political ones. . . . The idea is not sound therefore that the First Amendment's safeguards are wholly inapplicable to business or economic activity."  Plaintiff also purported to quote the following passage from *California Motor Transport v. Trucking Unlimited*, 404 U.S. 508, 510 (1972): "[i]n a representative democracy such as this, these branches of government act on behalf of the people, and, to a very large extent, the whole concept of representation depends upon the ability of the

---

[1] Plaintiff failed to include in his brief a complete citation to *Thomas*.  The short citation that Plaintiff did provide was also incorrect because it cited the case as being at "516 U.S. at 531" when *Thomas* is actually located at 323 U.S. 516.

people to make their wishes known to their representatives."[2]  It is unclear how these two passages, or the cases themselves, are of assistance to Plaintiff in defeating Defendant's motion for summary judgment.

In *California Transport* highway carriers filed suit against other highway carriers under the Clayton Act.  The petitioners charged that the respondents had "conspired to monopolize trade and commerce in the transportation of goods in violation of the antitrust laws.  The conspiracy alleged  is a concerted action by petitioners to institute state and federal proceedings to resist and defeat applications by respondents to acquire operating rights or to transfer or register those rights."  *California Transport*, 404 U.S. at 509.  In the section of the opinion citing *Eastern Railroad*, the Supreme Court concluded that groups with common interests could "without violating the antitrust laws, use the channels and procedures of state and federal agencies and courts to advocate their causes and points of view respecting resolution of their business and economic interests *vis-a-vis* their competitors."  *Id.* at 511.

*Thomas* involved a habeas corpus proceeding.  The appellant, Thomas, was the president of the International Union U.A.W. (United Automobile, Aircraft and Agricultural Implements Workers) and a vice president of the Congress of Industrial Organizations.  *Thomas*, 323 U.S. at 520.  Before he was scheduled to give a speech at a large meeting in Texas, Thomas was served with an order restraining him, "while in Texas, from soliciting members for or memberships in specified labor unions and others affiliated with the Congress of Industrial Organizations, without first obtaining an organizer's card as required by" Texas state law.  *Id*. at 518.  Ignoring the

---

[2] Although this language appears in *California Motor*, the Supreme Court was actually quoting from an earlier Supreme Court case, *Eastern Railroad Conference v. Noerr Motor Freight*, 365 U.S. 127, 137 (1961).

restraining order, Thomas spoke at the meeting and was subsequently arrested. *See id*. at 522-23. The issue in *Thomas* centered on the conflict between the State's power to regulate labor unions and the rights protected by the First Amendment. *See id*. at 532-33. The language Plaintiff cites in his brief appears in the context of the Supreme Court's discussion of whether the First Amendment's safeguards of free speech and free assembly may apply to business or economic activities. *See id*. at 531.

Neither *California Transport* nor *Thomas* address whether the public concern requirement applies to First Amendment claims brought by an employee who enlists the aid of his state representative in resolving an employment dispute. Plaintiff's citation to these cases has failed to convince the Court that the law was clearly established that Plaintiff had a First Amendment right not be retaliated against for asking a state representative to prevent a job transfer that would require the Plaintiff to either move to Albuquerque or endure a lengthy commute. *See Pueblo Neighborhood Health Centers, Inc. v. Losavio*, 847 F.2d 642, 645 (10th Cir. 1988) (stating that once a defendant raises the qualified immunity defense, the plaintiff bears the "burden of convincing the court that the law was clearly established"). Therefore, Defendant is entitled to qualified immunity as to Plaintiff's First Amendment claim.

IT IS THEREFORE ORDERED that:

1. Defendant's Second Motion for Summary Judgment based on Qualified Immunity, (Doc. No. 69), is GRANTED; and

2. because Plaintiff's First Amendment claim has already been dismissed, no separate order of dismissal will be entered.

_____
UNITED STATES DISTRICT COURT JUDGE